(68 App. Div. 182.)

### MEIGGS v. HOAGLAND.

(Supreme Court, Appellate Division, Second Department. January 17, 1902.)

1. FOREIGN WILLS—RECORD—REAL ESTATE—PRESUMPTION.

The attestation clause of a will probated in Pennsylvania did not contain a statement that the witnesses had become such at the request of the testator, or that they had signed in his presence. Six years later the witnesses appeared before another deputy register of wills, and testified to the omitted facts. The record of the will and the original probate proceedings, and also the subsequent testimony, were filed in this state, under Laws 1872, c. 680 (substantially re-enacted in Code Civ. Proc. § 2703), providing that where real estate situated in the state is devised by a will of a person residing out of the state, and such will had been probated in such other state, an exemplified copy of the will and proofs may be recorded in a surrogate's office in this state, and shall be "presumptive evidence" of the will and its execution. *Held* that, if such will and proof were properly admitted of record, the statutory presumption raised by such record was overcome by the showing on its face that the will was not admitted to probate on evidence existing at the time of the probate.

2. CEMETERIES—ADVERSE POSSESSION.

Evidence that the husband of plaintiff's grantor was buried in a certain cemetery lot in 1866, and was disinterred in 1872, when the lot was deeded to plaintiff, but that no possession was taken by plaintiff, did not show title in plaintiff by adverse possession.

3. INFANTS—DEEDS—GUARDIANS—AUTHORITY.

A deed by one, as general guardian, attempting to convey the interest of an infant, without showing authority for its execution, was fatally defective.

4. SAME—STATUTE OF LIMITATIONS.

Where an owner of land died in 1866, leaving a daughter who became of full age in 1884, but died in 1891, leaving an infant 3 years of age, the statute of limitations had not run against such infant, under Code Civ. Proc. § 375, providing that, where the right accrues to a person under 21 years of age, the time of disability is not part of the time limited.

Appeal from special term, Kings county.

Action by Mary A. Meiggs against Raymond Hoagland to compel defendant to accept a deed tendered under a contract for the sale of land. From a judgment in favor of plaintiff, defendant appeals. Reversed.

Argued before GOODRICH, P. J., and BARTLETT, JENKS, WOODWARD, and HIRSCHBERG, JJ.

James C. Bergen, for appellant.
Henry L. Bogert, for respondent.

GOODRICH, P. J.  The plaintiff, claiming that she had good title to eight lots constituting a plot in Greenwood Cemetery, Brooklyn, entered into a written contract to convey the same to the defendant, and, at the time and place appointed in the contract, tendered a deed thereof to the defendant, who refused to accept the same or to carry out the contract, on the ground that the plaintiff's title was defective. This action is brought to compel the defendant to accept the deed as tendered, and carry out his contract. The original title to these lots was in the Greenwood Cemetery Association. There appears upon the books of the association a statement that the lots were sold by it to one John F. Cleu on April 11, 1853. The deed is not recorded in the office of the register of the county of Kings, and was not produced upon the trial,—its loss being proved; but the defendant concedes that the deed was made and delivered, and the property paid for by Cleu. Cleu died August 6, 1866, and his remains were interred in one of the lots in question on August 9, 1866. They were disinterred on December 6, 1872, at the request of his widow, and buried in another lot in the same cemetery. By his last will and testament, Cleu had bequeathed to his widow, Philomena, all his "real estate, personal and mixed." This will, which was executed in Philadelphia, Pa., was admitted to probate in that city by a deputy register of wills on August 27, 1866. The attestation clause reads, "Signed, sealed, published, and declared by the said J. F. Cleu as his last will and testament in our presence." There were three subscribing witnesses. Two of them testified "that they were present, and did see and hear John F. Cleu, deceased, the testator therein named, sign, seal, publish, and declare the same as and for his last will and testament, and that at the doing thereof he was of sound disposing mind, memory, and understanding, to the best of their knowledge and belief." It did not contain a statement that the witnesses had become such at the request of the testator, or that they had signed as witnesses in his presence. Six years later, on November 27, 1872, the same witnesses appeared before another deputy register of wills in Philadelphia, and testified that they had been requested by the testator to act as witnesses, and had subscribed their names as attesting witnesses. The record of the will and proceedings at the time of the first probate, and also the subsequent testimony of the two witnesses, were filed in the office of the surrogate of the county of Kings previously to November 27, 1872; and on November 28, 1872, the widow (then Philomena M. Smith), with her husband, Isaac M. Smith, executed a deed of the premises to the defendant; the deed being recorded December 6, 1872. When the exemplified copy of the probate proceedings in Philadelphia was filed in the surrogate's office of Kings county, in November, 1872, chapter 680 of the Laws of 1872 was in force. That chapter provided that where any real estate situate in this state should be thereafter devised by will by any person residing out of this state, and such will had been duly admitted to probate in such other state, and filed or recorded in the probate office, an exemplified copy of such will and of the proofs might be recorded in the office of the surrogate of any county in this state where the real estate was situated,

and should be presumptive evidence of said will and its due execution. The plaintiff offered in evidence a copy of the papers thus filed in the office of the surrogate of Kings county, exemplified by the clerk of the surrogate's court in accordance with section 2703 of the Code of Civil Procedure. There was no exemplification of the record of the will before the probate court of Philadelphia, as might have been offered in evidence under section 2632 of the Code of Civil Procedure, which has since been amended by chapter 540, Laws 1901, which was to take effect in September, 1901. Consequently this amendment did not affect the proceedings in the trial now under consideration, and we need not consider it.

The defendant refused to accept the title on the ground that by the law of this state a will valid to pass title to real property situated in this state must be executed according to the laws of this state; that the record shows that at the original probate in Philadelphia, in 1866, the witnesses did not testify that they acted at the request of the testator, and consequently that as to his real property in this state Cleu died intestate; that the subsequent proceedings in 1872, which occurred before a different deputy register, were a nullity, they being no part of the probate proceedings, and not taken in any action to establish the will; that no notice was given to the heirs or other persons; that there was no judicial act or adjudication based upon it; and that it constituted no part of the record of probate, which, by chapter 680 of the Laws of 1872, embodied by chapter 178 of the Laws of 1880 in section 2703 of the Code of Civil Procedure, is made presumptive evidence of the will, and of the due execution thereof.

In re Langbein, 1 Dem. Sur. 448, is singularly similar to the case at bar. In that case witnesses on the probate of a will of real estate appeared before the register in Philadelphia, where the will was proved, and were described in the will as subscribing witnesses, but it did not appear that they signed the attestation clause as such at the request of the testator. The will was admitted to probate in Philadelphia, and several months later the witnesses appeared before the register and testified, among other things, that they signed their names as witnesses to the will at the request of the testator. An exemplified copy of the entire record, including the second deposition of the witnesses, was annexed to the petition before the surrogate, asking to have the will recorded as a will of foreign real estate. Surrogate Livingston held that the later testimony of the witnesses formed no part of the proof on which the will was admitted to probate, and so was not entitled to be recorded, under section 2703 of the Code of Civil Procedure, as presumptive evidence on the subject of the execution of the will. This section is a substantial reenactment of the statute of 1872 above referred to. In Re Shearer's Estate, 1 Civ. Proc. R. 455, the same surrogate denied an application to admit to record a will which had been admitted to probate by the register of wills of Tioga county, Pa., on the ground that the witnesses did not testify that they had signed as subscribing witnesses at the request of the testator, or that they signed the same as witnesses. It follows that, although the will was admitted to probate

in Pennsylvania, it was admitted according to the laws of that commonwealth, which apparently do not require proof that the subscribing witnesses became such at the request of the testator.   The statute of Pennsylvania (P. L. 1832–33, p. 249, § 6) does not require that the subscribing witnesses to a will must have become such at the request of the testator.   Indeed, the witnesses need not have subscribed at all.   Hight v. Wilson, 1 Dall. 94, 1 L. Ed. 51; Carson's Appeal, 59 Pa. 493.   Assuming, however, for the purposes of argument, that all of the proceedings in the register's court of Philadelphia connected with the will of Mr. Cleu were legally recorded in the surrogate's office of the county of Kings in 1872, they are only made presumptive evidence of the will and its due execution; and this presumption will be overcome where it appears thereby that the will was not admitted to probate upon evidence, existing at the time of the probate, that the subscribing witnesses became such at the request of the testator.   To hold otherwise would be to give greater effect to the exemplified copy of the will and proof than would be given to the will itself.   Such was the decision in Lockwood v. Lockwood, 51 Hun, 337, 3 N. Y. Supp. 887, 2 L. R. A. 425,—a decision made in the former general term of the First department.

The plaintiff also contends that title has been acquired by adverse possession.   Section 370 of the Code of Civil Procedure reads as follows:

"For the purpose of constituting an adverse possession, by a person claiming a title, founded upon a written instrument, or a judgment or decree, land is deemed to have been possessed and occupied in either of the following cases: (1) Where it has been usually cultivated or improved.   (2) Where it has been protected by a substantial inclosure.   (3) Where, although not inclosed, it has been used for the supply of fuel, or of fencing timber, either for the purposes of husbandry, or for the ordinary use of the occupant. Where a known farm or a single lot has been partly improved, the portion of the farm or lot that has been left not cleared, or not inclosed, according to the usual course and custom of the adjoining country, is deemed to have been occupied for the same length of time, as the part improved and cultivated."

There is no evidence that the lots were ever "protected by a substantial inclosure," or were "usually cultivated."   The decision of the court below holds the plaintiff's title good by "adverse possession; the widow of John F. Cleu having taken possession of the said eight lots by interring therein the body of her husband in 1866, and having delivered the possession to the plaintiff in 1872 by disinterring said remains and leaving the plot in the possession of the plaintiff, unincumbered."   Even if it were true that the body of Cleu was buried in one of the lots, and remained there thereafter for more than 20 years, and that adverse possession of that lot, or even of the whole plot, could have been predicated thereon (Conger v. Treadway, 132 N. Y. 259, 30 N. E. 505), still this adverse possession ended when the body was removed, and such removal was more than 20 years before the contract for the sale of the property to the defendant.   There is no other evidence of facts constituting adverse possession within the language of section 370, supra.   The contract of sale was dated April 14, 1900, and acknowledged May 1, 1900.   The

deed was to be delivered May 17, 1900. On May 19th, Philomena M. Smith, "individually and as general guardian for Anita Irene Cussen, Anita Irene Cussen [sic], and John Felix Smith, son of John F. Cleu," executed a quitclaim deed of the premises to the plaintiff. This deed attempted to convey the interest of Anita Irene Cussen, an infant under the age of 14 years. No authority for the execution of such conveyance by her as guardian of the infant is shown, and the deed was therefore fatally defective. The statute of limitations founded upon adverse possession has not run against Anita. John F. Cleu died in August, 1866. One of his daughters (Marie Philomena, the mother of Anita) became of full age February 1, 1884. Allowing 10 years for the statute to run against her, it would have run out in 1894. She, however, died in January, 1891, leaving Anita, her infant daughter, then about 3 years of age. Of course, the statute will not begin to run against her until she becomes of age. Section 375, Code Civ. Proc. It follows that the plaintiff had not a good title to the lot in question, either of record or by adverse possession, at the time of her contract of sale to the defendant, and has never tendered the conveyance of a good and sufficient title.

As both parties to this controversy seem desirous of fulfilling the contract, it is proper to suggest that the title might be perfected by an application to the court to dispose of the interest of the infant, Anita, under the provision of the Code providing for the disposition of the real property of infants. Code, § 2348 et seq.

The judgment should be reversed, and a new trial granted, with costs to abide the final award of costs. All concur.