MEIGGS, Respondent, v. HOAGLAND, Appellant. (Supreme Court, Appellate Division, Second Department. March 6, 1903.) Action by Mary A. Meiggs against Raymond Hoagland. From a judgment for plaintiff, defendant appeals. Reversed. James C. Bergen, for appellant. Henry L. Bogert, for respondent.

PER CURIAM. We think that inasmuch as 30 years had not expired at the time of the trial of this action, after the second record in Pennsylvania, the decision of this case must be controlled by the former decision in Meiggs v. Hoagland, 68 App. Div. 182, 74 N. Y. Supp. 234. Judgment reversed, and new trial granted, costs to the appellant to abide the final award of costs.

WOODWARD, J. (dissenting). This action is brought to compel specific performance of a contract of purchase and sale made and entered into between the parties. The plaintiff tendered a deed of the premises in dispute, and the defendant declined to accept the same on the ground that the plaintiff did not offer a good title. The case has been tried twice, resulting in judgments in favor of the plaintiff at both trials. It is here on a second appeal upon substantially the same facts which were presented upon the former appeal, except that the plaintiff put in evidence an exemplified copy of the will under which she claims title, which will was executed and published in Philadelphia, in the state of Pennsylvania. The conceded source of title is the Greenwood Cemetery Association, and, according to the books of that association, the lot or lots in controversy were sold by it to one John F. Cleu on the 11th day of April, 1853. A deed was given at the time, but it cannot now be found. It is, however, conceded that the title at one time vested in the said John F. Cleu, and his remains were interred in one section of the premises on the 9th day of August, 1866. The remains were disinterred in 1872, at the request of his widow, and interred in another lot in Greenwood. Mr. Cleu left a last will and testament, by which he bequeathed to his widow all "real estate, personal and mixed." This will was executed in Philadelphia, and was there admitted to probate on the 27th of August, 1866. The witnesses who proved the will did not at that time state that they acted as witnesses at the request of the testator, nor does the attestation clause state that such was the fact. On the 27th day of November, 1872, the witnesses again appeared before the probate court in Philadelphia, and stated under oath that they had been requested by the testator to act as witnesses at the time they did so act. Two days after this second appearance of the witnesses before the probate court in Philadelphia, an exemplified copy of the will and of the proof was filed in the office of the surrogate of the county of Kings. On the 6th of December, 1872, a deed was recorded in Kings county, by which Mrs. Cleu, the legatee under the will, transferred the lots in controversy to the plaintiff

in this action, in so far as she could accomplish this object, and the question presented on this appeal is whether the plaintiff has a good title. If she has, then there is no question that she is entitled to judgment compelling a specific performance of the contract, and the defendant appears willing to perform, provided he can be assured of a perfect title.

There is no question that John F. Cleu, by his last will and testament, intended to vest his estate, real, personal, and mixed, in his widow. He died in 1866, was interred in the premises now in dispute, and his widow and heirs at law from that time up to the present have acted upon the theory that the will operated to vest in the widow all of the property of which the testator died seised, and all of the heirs at law, with the exception of a minor grandchild (and she in so far as she is capable of acting), have joined in a quitclaim deed of the premises in dispute to the plaintiff. If the witnesses who proved the will had testified at the time the same was admitted to probate that they had witnessed the execution of the same at the request of the testator, there would have been no question as to the effect of the will; it would have operated to vest the property in the testator's widow. If these witnesses did, in fact, witness the execution of the will at the request of the testator, and no one disputes their subsequent sworn statement that such was the case, there would seem to be no doubt of the sufficiency of such a will to convey title to the testator's property.

The provision of the statute is that "there shall be at least two attesting witnesses, each of whom shall sign his name as a witness, at the end of the will, at the request of the testator." 2 Rev. St. p. 63. If the will was in fact made, executed, and published with all the formalities required by the law, it is certain that a mere defect in the proof in probating the will could not operate to vest any rights in the testator's heirs at law. There might be a defect in the title of the beneficiary under the will, owing to a lack of a sufficient record, but the heirs at law would take no title; they would simply occupy the same position that they would be in if the will had not been offered for probate. In other words, if the will had not been offered for probate until the 27th day of November, 1872 (the date when the subscribing witnesses appear and testify that the will was executed in their presence, and that they signed the same at the end thereof at the request of the testator), and the proper proof had then been made, the heirs at law would have had no interest in the property, and the testator's widow would have taken a perfect title to the premises in dispute, as well as to other property of which the testator died seised. If we are right in this proposition, no reason suggests itself why the register of wills, who had taken jurisdiction in 1866 and issued letters testamentary, might not continue that jurisdiction to take formal proofs to supply a defect in the title of the testator's beneficiary, or why these proofs might not relate back to the date of the original probate of the will. No rights of the heirs at law could have intervened, because the will, having been duly executed, no interest could have passed to them, and it is generally competent for a court having jurisdiction of a case to supply defects which do not prejudice the rights of third parties.

Section 723, Code Civ. Proc.; sections 2472–2475, Id.

The practical question here is not whether the plaintiff is able to give an absolutely perfect title from a technical standpoint, but whether she has offered the defendant a merchantable title; and, if it appears by the record that the only person who could raise any question has never had any interest in the estate, we are unable to see any good reason why this court may not direct a specific performance of the contract. By section 2703 of the Code of Civil Procedure it is provided: "Where real property situated within this state, or an interest therein, is devised or made subject to a power of disposition by a will duly executed in conformity with the laws of this state, of a person who was at the time of his, or her death, a resident elsewhere within the United States, or in a foreign country, and such will has been admitted to probate within the state or territory, or foreign country, where the decedent so resided, and is filed or recorded in the proper office as prescribed by the laws of that state or territory or foreign country, a copy of such will or of the record thereof and of the proofs or of the records thereof, or if the proofs are not on file or recorded in such office, of any statement, on file or recorded in such office, of the substance of the proofs, authenticated as prescribed in this article, or if no proofs and no statement of the substance of the proofs be on file or recorded in such office, a copy of such will or of the record thereof, authenticated as prescribed in this article, accompanied by a certificate that no proofs or statement of the substance of proof of such will, are or is on file or recorded in such office, made and likewise authenticated as prescribed in this article, may be recorded in the office of the surrogate of any county in this state where such real property is situated; and such record in the office of such surrogate or an exemplified copy thereof shall be presumptive evidence of such will and of the execution thereof, in any action or special proceeding relating to such real property." The will of the late John F. Cleu, as it appears in the record, is executed in conformity with the laws of this state, so far as its form is concerned, but it does not recite that the witnesses who have signed at the end thereof have done so at the request of the testator. It is not necessary that this should be stated in the will, but is a matter which must be proved in order to give the will validity within this state. It appears that at the time this will was offered for probate in Pennsylvania, in 1866, the laws of that state did not require this proof; but in 1872 the subscribing witnesses who proved the will at the time letters testamentary were issued, in 1866, appeared before the deputy register of wills, and supplemented the proofs by sworn statements, which recite that on "this 27th day of November, 1872, before me personally appeared Theodore Cuyler, one of the subscribing witnesses to the foregoing last will of John F. Cleu, deceased, and having been duly sworn," etc., stated that he signed the said will at the end thereof in the presence of the testator and at his request. A similar affidavit or statement is made by the other subscribing witness who took part in the original probate of the will, and these statements appear to have been made a part of the record in the proceedings

in reference to the probate of the will, as shown by the exemplified copy of the record of the will made by the register of wills of the city and county of Philadelphia, on the 20th day of February, 1902. It is provided by section 1 of article 4 of the Constitution of the United States that "full faith and credit shall be given in each state to the public acts, records and judicial proceedings of every other state"; and the public officials of the state of Pennsylvania having admitted to their records, in connection with the probate of the will of the late John F. Cleu, a statement necessary to give effect to the will within the state of New York, it would seem that comity and the spirit of section 2703 of the Code of Civil Procedure demanded that we accept the record as thus made as presumptive evidence of the facts therein stated, even though this should run counter, in some measure, to the determination of the learned surrogate in Matter of Langbein, 1 Dem. Sur. 448. The record, as thus made up, shows the will executed with all of the formalities required by the laws of this state, and the mere fact that the witnesses failed to state all of the facts necessary to make a good will under the laws of New York, if the facts actually existed, could not operate to give any title to the heirs at law of the late John F. Cleu. There is no evidence in the case suggesting anything to the contrary; no one with any claim upon the estate is here asserting any rights in the premises; and the record, under the facts in this case, is sufficient to show that the plaintiff·can convey a title which cannot be successfully questioned because of the fact that no interest in the estate of John F. Cleu ever passed to his heirs at law, and none of them is making such a claim 37 years after his death.

The will now before us was proved in 1866, apparently with all of the formalities required by the laws of Pennsylvania. The proofs taken upon the original probate were supplemented by additional proof or statements under oath, and identified with the will in 1872, and an exemplified copy of the record of the will, as thus completed, was made by the register of wills of the city and county of Philadelphia, on the 20th day of February, 1902, 37 years after the will was proved. By the provisions of section 2632 of the Code of Civil Procedure, as amended by chapter 540 of the Laws of 1901, the "exemplification of the record of a will which has been proved before the surrogate or judge of probate, or other officer exercising the like jurisdiction, of another state, must, when certified by the officer having by law, when the certificate was made, custody of the record, be admitted in evidence, as if the original will was produced and proved, when thirty years have elapsed since the will was proved." That is, a will which has been probated and acted upon for a period of 30 years or more in a sister state, when the record of such probate is properly exemplified, becomes evidence of equal conclusiveness with the original will produced and proved. The will now before us was probated according to the laws of Pennsylvania more than 30 years ago; the record, properly authenticated, is now in evidence; and the fact that all of the matters were not proved which were necessary to make the will effective in the state of New York at the time of the probate, where the necessary facts actually existed, and have since been supplied by statements accepted and entered upon the records of a sister state, ought not to be held to cast any cloud upon the title descending from the beneficiary under the will of John F. Cleu, who has acted under the letters testamentary issued in 1866, without question, down to the present time. So long as the fact exists that the will was made and executed in the manner prescribed by the laws of the state of New York, the heirs at law of John F. Cleu could not be vested with any title to the property in dispute, even though the will had not been probated until the time of the trial of the present action; and the mere fact that the necessary facts were not proved upon the probate did not prevent opening the case and admitting new proof, and when this proof became a part of the public records of the state of Pennsylvania · it related back to the date of the probate, and it is the duty of this state to give full faith and credit to the record as it is certified by the proper officials of a sister state.

Under these circumstances, the suggestion made by the appellant that the statute is unconstitutional, as against the rights of the granddaughter, need not be considered. The granddaughter never had any rights in the property, and the title offered by the plaintiff, as established by the judgment now under review, is without any legal defect which would warrant the defendant in refusing to accept the same under his contract with the plaintiff.

The judgment appealed from should be affirmed.