(41 Misc. Rep. 4.)

## MEIGGS v. HOAGLAND.

(Supreme Court, Special Term, Kings County. June, 1903.)

1. FOREIGN WILL—PROOF—SUFFICIENCY.
   The record, in the Surrogate's Court of the county where land is situated, of an exemplified copy of the record of the will, and proofs thereof from the office of register of wills in Pennsylvania, does not show title in the devisee where it does not show, either in the attestation clause or in the proofs, that the attesting witnesses became such at the testator's request, as required by the statutes of New York.

2. SPECIFIC PERFORMANCE—MARKETABLE TITLE.
   Where a devisee contracts to sell the real estate devised, but does not tender on the contract day a marketable title by failing to show execution of will, in a subsequent action for specific performance she cannot invoke Code Civ. Proc. § 2632, as amended in 1901 (Laws 1901, p. 1330, c. 540), making the record of a proven foreign will, exemplified by its custodian, admissible in evidence as if the original will was produced and proven, "when 30 years have elapsed since the will was proven," as such section can have no application, the question being as to the title presented on the contract day in 1900, and not of the title which plaintiff is able to present under the act of the Legislature passed in 1901.

Suit by Mary E. Meiggs against Raymond Hoagland to compel specific performance of a contract for the sale of real estate. Judgment for defendant.

Henry A. Bogert, for plaintiff.

James C. Bergen, for defendant.

GAYNOR, J. This is a suit in equity by grantor against grantee to compel specific performance of a contract to purchase real estate, the contract day being May 17, 1900. This is the third trial, judgment for the plaintiff on each former trial having been reversed and a new trial ordered. Such a history for equity suits was unheard of until recent years, and the novelty of it has not worn off among our educated bar. Since the beginning appeals from equity judgments have not been on bills of exceptions, but on the whole case; and the appeal court thus having all of the evidence before it, and reviewing the case thereon, gave the judgment which the chancellor should have given, if his judgment was found to be wrong. The judgment was not reversed and sent back to the chancellor or equity judge for a new trial, that is to say, with instruction to spit on his thumb and rub out the evidence, then take it over again and decide the case anew; on the contrary, the proper judgment was given and the case ended. That was the purpose of the appeal. In common-law actions, on the other hand, the appeal from the judgment was and is not on the entire evidence, but on a bill of exceptions, and if the judgment is reversed a new trial has to be ordered. The parties being entitled to a trial by jury, the appeal court cannot give judgment on the facts contrary to the finding of the jury, but must order a new trial; but no such difficulty besets an equity judgment. Where evidence is improperly excluded in an equity case it has to be sent back; but that seldom happens, for everything is taken in equity, unless to save time; the question on appeal being whether the findings are adequately sustained by competent evidence, and not merely whether incompetent evidence has been received. Why this suit was not disposed of finally on the first appeal, or on the second appeal, is not disclosed, but presumably there was a reason. These remarks are made at all only because it is now difficult for a trial judge to see how to deal with the case, or what to do with it.

The plaintiff claims title through the will of John Cleu, who died seised of the land in 1866. In 1872 his widow conveyed to the plaintiff. Unless, therefore, it is proved that the widow got title through a will of her husband competent to devise land in this state, the plaintiff must fail; and the burden is on the plaintiff to show that fact, it appearing that the widow got no title by conveyance.

On the first trial, in March, 1901, the plaintiff sought to prove the will of Cleu by reading in evidence the record in the Surrogate's Court of Kings county, where the land is situated, of an exemplified copy of the record of the will and of the proofs thereof from the office of the register of wills in Philadelphia, Pa. From this it appears that his will devising all of his real estate to his wife was proved and admitted to probate in Philadelphia in 1866, before a deputy register of wills, and recorded. Such proofs failed to show, however, that the witnesses to the will acted as such at the testator's request, as is necessary to the validity of a will by our statute of wills; nor was the fact attested by the attestation clause of the will. But such

record showed that six years later, viz., in 1872, these witnesses came back and made oath anew before another deputy register, showing that the testator requested them to act, and this was added to the record; but there was no new probate.

The learned trial judge deemed this sufficient proof of a will under our statute allowing proof by such a record. Code Civ. Proc. § 2703. The judgment was reversed on appeal on the ground that the proofs on which the will was probated in 1866 were insufficient, i. e., in that they did not show that the subscribing witnesses were requested to act by the testator, and that therefore the record did not show a valid will (68 App. Div. 182, 74 N. Y. Supp. 234); following two former decisions in this state (Matter of Langbein, 1 Dem. Sur. 448; Lockwood v. Lockwood, 51 Hun, 337, 3 N. Y. Supp. 887, 2 L. R. A. 425); and the court held (in substance and effect) that the said belated proofs of 1872 were not part of the probate and could not be considered of any effect.

On the new trial, in March, 1902, the evidence was the same, except that the plaintiff in addition to the said record of our Surrogate's Court read in evidence a copy of the said Philadelphia record certified by the register of wills of Philadelphia on February 20, 1902, but not recorded in our Surrogate's Court. It is said to have been introduced under section 2632 of our Code of Civil Procedure as amended in 1901 (Laws 1901, p. 1330, c. 540), making such foreign record competent evidence to prove the will in our courts "when thirty years have elapsed since the will was proved," which was the case, the will having been probated in Philadelphia in 1866, as we have seen.

The learned trial justice gave judgment for the plaintiff; but this judgment was reversed on the following memorandum per curiam: "We think that inasmuch as thirty years had not expired at the time of the trial of this action, after the second record in Philadelphia, the decision in this case must be controlled by the former decision." This would seem to imply that what it calls "the second record in Philadelphia," viz., the record of the additional oaths of the witnesses in 1872, amounts to something, is, in fine, the probate of the will, although the former decision of the learned court held it was not, and that such oaths could not be considered as part of the probate. If they are to be deemed part of the probate, then the first judgment would seem to have been erroneously reversed, for the record from our Surrogate's Court which was read in evidence on the first trial consisted of the entire Philadelphia record, including the said oaths of 1872, as we have seen. Whether the foreign record be received under section 2703 of the Code, through its record in our Surrogate's Court, as it was on the first and second trials, or under section 2632, as an independent record, as on the second trial, it is the same record still.

The third trial was had before me on May 5, 1903, which is more than thirty years after the making of the additional oaths in 1872; and the evidence is still the same, except that the Philadelphia record introduced under the said Code section (2632) was certified anew by the Philadelphia register since the lapse of such thirty years.

I confess to much embarrassment as to what to do. The decision

on the first appeal that the lack of evidence on the probate in 1866, that the testator requested the witnesses, was fatal, and not helped out by the additional oaths of 1872, is certainly binding on me. On the other hand, the decision on the second appeal that the thirty years run not from the date of probate in 1866, but from the time when the additional oaths were made in 1872, seems to unmistakably mean that the will was proved in 1872, for otherwise the thirty years could not be set running from that date.

Beset by these two positions, which seem to me contradictory, though owing, more likely, to my own shortcomings, I venture to suggest that the thirty years' amendment of the said section (2632) can have no application to the case at all; for the question is of the title presented on the contract day in 1900, and not of the title the plaintiff is able to present now by means of an act of the Legislature passed in 1901. The defendant was entitled to a marketable title on the contract day; that it has been made marketable since, by whatever means, does not enter into the case.

Judgment for the defendant, with the costs of the first trial only.